**NAVAR v. FIRST NAT. BANK OF BRECK-
ENRIDGE. (No. 10236.)**

(Court of Civil Appeals of Texas. Fort Worth.
May 12, 1923. Rehearing Denied
June 16, 1923.)

1. **Appeal and error** ⊜═1050(1)—**Admission of hearsay on vital issue held reversible error.**

In an action against a bank for refusal to pay deposit money, admission of hearsay testimony of a bank clerk that she was positive that the bookkeeper was sure that the man who withdrew the money was the depositor, the question of identity being vital to the case, is reversible error.

2. **Appeal and error** ⊜═882(9)—**Error in admission of hearsay held not cured by cross-examination.**

Where bank clerk testified over objection that she was positive that the bookkeeper was sure that the man withdrawing the money was the depositor, identity being a vital issue, admission of the hearsay evidence was not cured by cross-examination aimed at revealing its objectionable nature.

---

⊜═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Banks and banking 154(8)—Evidence held insufficient to warrant judgment for bank as against illiterate depositor demanding deposit.**

In an action for recovery of deposit in defendant bank, which deposit consisted of a cashier's check issued to depositor by such bank and which was indorsed by another with depositor's name, depositor making his mark, evidence *held* insufficient to show that the bank was authorized to pay the money to the one writing depositor's signature.

### On Motion for Rehearing.

**4. Appeal and error 281(1)—Motion praying to set aside verdict instead of judgment held not fatally defective in view of statute.**

A motion for a new trial praying that the verdict be set aside instead of the judgment is not fatally defective, so as to preclude consideration of assignment of error in admitting evidence where both parties and the court treated it as such motion.

**5. Appeal and error 281(2)—Motion for new trial unnecessary where case tried on special issues.**

Where a case is tried on special issues, a motion for new trial is unnecessary under Rev. St. arts. 1990 and 1991.

**6. New trial 119—Discretionary to consider motion when filed late.**

A motion for a new trial may, in the discretion of the trial court, be considered, though filed more than two days after judgment.

**7. Appeal and error 237(5)—Request for peremptory instruction not necessary preliminary to attack judgment, as not sustained by evidence.**

Appellant may attack the sufficiency of the evidence to sustain the judgment on appeal without a prior request for peremptory instructions.

**8. Banks and banking 154(6)—Presumption of notice of illiteracy from prior acceptance of check indorsed by mark.**

Where the bank accepts a deposit of a check indorsed with depositor's mark, the presumption of notice of the illiteracy in all future transactions must be overcome by evidence.

Buck, J., dissenting in part.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Action by Romulo Navar against the First National Bank of Breckenridge. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

A. L. Green, of Breckenridge, for appellant.

J. L. Goggans, of Breckenridge, for appellee.

BUCK, J. On July 28, 1921, Romulo Navar filed suit against the First National Bank of Breckenridge for $622, which plaintiff alleged he had deposited with the defendant bank, and had not withdrawn, and that defendant failed and refused to pay him any part of said amount. He alleged that he was an illiterate Mexican laborer, unable to either speak, read, or write the English language and unable to sign his name, all of which was well known to defendant on the 16th day of September, 1920, when he alleged that he deposited $452 in the form of a cashier's check issued by the defendant bank on September 14th. He further alleged that on December 22d thereafter he deposited with the defendant bank the sum of $170.

The defendant answered by a general demurrer and a general denial, and in an amended pleading admitted and alleged that one Romulo Navar, or a person representing himself to the agent and officers of the bank to be Romulo Navar, and whom they knew as such, did, on or about September 16, 1920, deposit with the defendant in due course of business, to be paid out upon his demand by checks signed by him, the said sum of $452, and did on December 22d thereafter deposit $170. Defendant further pleaded that, after said deposits were made, the identical person who made the deposits with the defendant bank under the name of Romulo Navar subsequently, by checks drawn upon the defendant and signed by the same party and with the same signature as was given to the defendant when said deposits were made, withdrew all of said funds from the bank, and, therefore, that the defendant was not liable to the plaintiff in any sum whatsoever. Defendant further pleaded that if, in fact, the plaintiff was the genuine Romulo Navar to whom belonged the money so deposited in the defendant bank, then that he negligently and carelessly permitted some other person whose name was to the defendant unknown, but to plaintiff well known, to represent himself to be Romulo Navar and to make the deposits heretofore mentioned and in his name as such Romulo Navar and to authorize this defendant to pay out such deposits upon checks signed by such other person, and that the defendant did in fact so pay out said deposits as instructed at the time they were made with this defendant and in the due course of business upon checks drawn and signed by said person claiming to be Romulo Navar and known to this defendant as such. Further pleadings by defendant of the same character were included in its answer.

The cause was tried before a jury, to whom was submitted the following special issues, which said jury answered as indicated:

"1. Is the plaintiff in this case the identical person who deposited the funds in controversy

in the defendant bank under the name of Romulo Navar? Ans. No.

"2. Was the plaintiff guilty of negligence or carelessness in connection with the $170 deposit, if made by him, which operated to mislead the defendant and cause it to pay out said $170 to some other party other than the plaintiff? Ans. Yes.

"3. Was the plaintiff guilty of negligence or carelessness with reference to the $452 deposit, if made by him, which operated to mislead the defendant bank and cause it to pay out said $452 to some party other than the plaintiff? Ans. Yes.

"4. Was the bank guilty of any negligence in paying out the $170 in controversy to some party other than the plaintiff, if it in fact did so? Ans. No.

"5. Was the bank guilty of any negligence in paying out the $452 in controversy to some other party other than the plaintiff, if it in fact did so? Ans. No.

"6. Did the same party who deposited the $452 cashier's check sign the two checks upon which it was paid out? Ans. Yes."

Upon the answers of the jury to these issues, the court entered judgment for defendant, and the plaintiff has appealed.

The evidence of plaintiff tends to show that he is, in fact, an illiterate Mexican, who at the time of the transactions herein mentioned was working in or near the town of Breckenridge; that on September 14, 1920, he went to the bank of defendant for the purpose of depositing the sum of $452; that he could not talk English, and the clerk or officer of the bank waiting on him understood that he wanted to purchase a cashier's check, which was duly issued to him. On September 16th, having learned that he had a cashier's check instead of a deposit slip, he came back to the bank and in there met another Mexican, who it appears was named Manuel Perez. He found this second Mexican could speak English, and told him he wanted to make a deposit of his cashier's check. With the aid of the interpreter the plaintiff deposited his check, Perez writing plaintiff's name on the face of the check and at the left hand corner, and plaintiff making his (x) mark. He said the bank officer told him to make his mark, the officer writing the word "signature" above his name and "his" above such signature and "mark" below it. On the back of the check is the indorsement "Romulo Navar" without any (x) and without any words indicating that the name had been written by some one else other than the plaintiff. Plaintiff testified:

"When I went in the bank, this boy Manuel Perez saw me and asked me what I was doing there, what kind of business I had to do there. I met him that day in the bank and knew him only that day; that is the first time I ever met him. That was the day I deposited the check."

Plaintiff testified that he did not see Perez write plaintiff's name on the back of the cashier's check. Plaintiff further testified the next time he saw Perez was in December; that he met him at the post office and Perez asked him if he was going to the bank to deposit some more money and plaintiff told him he was. Perez told him that he was going on the same business and would interpret for him so he would not have any trouble. Perez went to the bank with him, and the second deposit of $170 was made. Later, in May, 1921, Perez came to where plaintiff was working in the oil fields and told him that the bank wanted his pass book and had requested Perez to go out to where plaintiff was working to get it. This was on Sunday. Plaintiff did not give Perez the passbook, but on the Monday following went to town. He testified that he met Perez at the bridge coming into town; that they went to the bank and talked to Mr. Glenn Russell, the cashier; that he gave the book to Perez and the latter handed it to Mr. Russell; that they told him that Mr. Russell said he did not have time that day to look over the book, and to leave it for two or three days. Perez and plaintiff left the bank together. After about five days, plaintiff came back to town, and met Perez again on the streets of Breckenridge. Perez and plaintiff went in the bank together, and Mr. Russell handed the book to Perez, and Perez gave it to plaintiff in the presence of Mr. Russell.

The bank's testimony was to the effect that they did not know the plaintiff in the transaction at all; that the man that they knew as Romulo Navar deposited the cashier's check in the first place, and later made the deposit of $170, and subsequently brought back the passbook, which was balanced and returned to him; that the money was, subsequent to the deposit, checked out under checks signed by Romulo Navar. The two checks, one for $150, and another for $300, included in the statement of facts, are signed "Romulo Navar" but with no "x" and words indicating that the signature was written by any person other than Romulo Navar.

Some objections have been made by the appellee to appellant's brief and also by appellant to appellee's brief, because it is alleged that the briefs were not prepared in accordance with the rules of the Supreme Court, established for practice in the Courts of Civil Appeals, 230 S. W. vii and viii. We have concluded, owing to the evident difficulty that some of the attorneys have in complying with the new rules, to disregard the objections and to consider both briefs.

[1, 2] Appellant's second assignment is directed to the testimony of Mrs. H. E. Carlisle, witness for the defendant. She testified that she was employed by the defendant bank and had charge of the statements;

that she had occasion to deal with a party by the name of Romulo Navar and had seen him twice, but that the man she knew as Romulo Navar was not the plaintiff; that the Romulo Navar she knew was a smooth-shaved man and seemed to be well educated, nice looking, and well dressed. The first time she remembered seeing him he came into the bank and said there was a mistake in his account; that another young lady waited on him, but the witness was standing close by. He asked to see the bookkeeper, so the witness called the head bookkeeper, and the man talked with him; that later she handed out a statement to him; that the bank required a depositor, when a statement was returned with canceled checks, to sign his name to a receipt; that Mr. Kirby brought the statement to witness and told her he had checked it over and it was ready to be handed out to the man, known as Romulo Navar; that the other young lady, Miss Joiner, took the statement and had the man sign it, evidently the receipt; that he was the only man at the window when he went to sign for it, and she asked him to sign on that line; that he hesitated and witness told him to sign on that line; that there were three canceled checks delivered to him at the time, one for $15, one for $40, and one for $25; that this was on April 4, 1921, and the account was closed out on that day. Later she testified in response to questions by counsel for defendant:

"I am positive Mr. Kirby was sure this man was Romulo Navar until the day this other man came in."

Plaintiff objected to this evidence, on account of it being hearsay, incompetent, and irrelevant, and calculated to prejudice the rights of the plaintiff. Upon the objection being overruled, and upon questions from plaintiff's counsel, the witness further testified:

"I am positive of that because if Mr. Kirby had not been sure he would have said something about it. He would have said he was calling for Romulo Navar's statement, but Mr. Kirby said this man wants his statement, wants to sign for his own statement. Mr. Kirby was with him both times, and if he was not sure he would have said this man wants to sign for Romulo Navar's statement."

Since the question of the identity of the plaintiff with a man who made the deposits was the vital issue in the case, we feel that the admission of this testimony, which is evidently hearsay, was such error as requires a reversal of the judgment. Nor do we think that the injurious effect of the hearsay evidence elicited by defendant's counsel from the witness is removed by the testimony of the witness elicited by plaintiff's counsel. Nor do we think that appellant is precluded from urging this error, because, after his objection to the testimony

254 S.W.—9

had been overruled, he further questioned the witness in order to show that said testimony was hearsay and therefore inadmissible.

[3] At least the majority, consisting of Chief Justice CONNER and Associate Justice DUNKLIN, are of the opinion that the evidence does not sustain the verdict and judgment. Mr. Glenn Russell, cashier of the bank, testified that he signed the cashier's check issued to Romulo Navar; that he wrote the word "signature" in the left-hand corner of the said cashier's check, and signed his name to said check, but that he never saw the plaintiff until he came into the bank and demanded his money, and it was found that the money had all been checked out; that the bank generally required of a depositor his signature on an identification slip; that the bank had moved its quarters between the time when the cashier's check was issued, and later returned and deposited, and the time when the subsequent transactions with reference to the account occurred; that they had looked for the defendant's signature on this identification slip, but could not find it; that the entries in the passbook of the deposits are shown to have been made, the first one by an employé named Allcock, and the next one by an employé named Elkins. He testified that Allcock was not working for the bank at the time of the trial; that he was living in the north somewhere. He did not know where. Evidently from the cashier's testimony, Allcock was the man who received the deposit of the cashier's check, on the face of which was written "Romulo Navar" and his x mark. If the clerk, representing the bank, received the deposit with an indorsement on the face thereof, indicating that the depositor could not write his name, but make his mark, then the bank had notice of the fact that the depositor could not write his name, and was guilty of negligence in paying the checks signed "Romulo Navar" without the words "his (x) mark." It does not appear what effort the bank had made to find out where Allcock was and to get his deposition. Evidently he, if he received the deposit of the cashier's check, knew that the depositor was not able to write his signature. For this reason, also, at least in the opinion of the majority, the judgment below should be reversed.

For the reasons given, the judgment of the court below is reversed and the cause remanded.

On Motion for Rehearing.

[4, 5] It is true that in the amended motion for new trial, filed December 21, 1921, plaintiff prays that "the *verdict* (italics ours) rendered in this cause on the 16th day of December, 1921," be set aside, etc. He does not specifically pray that the judgment be set aside. The judgment is "entered as of

December 16, 1921," thereby indicating that it was, in fact, rendered at a later date and ordered entered as of December 16th. The trial court overruled the motion and in such order designated the instrument as a motion for new trial. Apparently the counsel for both sides so regarded it, and we have concluded that we must so regard it, in spite of the fact that the pleader used "verdict" where he should have used "judgment." Moreover, under Rev. St. arts. 1990 and 1991, where a case has been tried upon special issues, a motion for new trial is not necessary to perfect an appeal. Stubblefield v. Jones (Tex. Civ. App.) 230 S. W. 720, and cases cited.

[6] A motion for new trial may be in the discretion of the trial court considered, though filed more than two days after judgment. See George v. Taylor, 55 Tex. 97, and Alridge v. Mardoff, 32 Tex. 205, construing article 2023, Rev. St. Moreover, this is an amended motion for new trial, and evidently was filed in lieu of an original motion, which was probably filed within the two days. We think the objection to our considering appellant's second assignment should be overruled, especially coming at this late hour, on motion for rehearing.

On motion for rehearing, appellee's counsel argues vigorously and forcefully that the testimony elicited by counsel for appellee from its witness Mrs. H. E. Carlisle was not hearsay; that the witness in her answer was only summing up the inferences she drew from the acts, words, and conduct of Perez and Mr. Kirby. He quotes the following extract from Dove v. Coleman (Tex. Civ. App.) 234 S. W. 917, 918, to wit:

"The general rule is that, when the motive or intent or belief of any person is a material fact, direct testimony as to such motive, intent, or belief is competent, and a further fundamental rule of evidence is that a party may testify as to matters explanatory of facts in evidence, or of inferences therefrom"—citing authorities.

But the trouble is that in the instant case the motive, intent, or belief of the witness was not a material fact, and the testimony as to what the witness believed Mr. Kirby thought was not material or admissible.

[7, 8] But irrespective of the question as to the admissibility of this testimony, the majority still adhere to the conclusion that the evidence is insufficient to sustain the verdict and judgment for the reasons set out in the original opinion. They are of the opinion that the appellant is not precluded from attacking the sufficiency of the evidence merely because he did not ask for a peremptory instruction. Electric E. & B. Co. v. Ablon, 110 Tex. 235, 218 S. W. 1030, by Supreme Court. He does not claim on this appeal that a peremptory instruction should have been given, but that a new trial should have been granted, because the evidence tends to show that Allcock, the agent of the bank who received the deposit of the certified check, must have known that the plaintiff signed his name by mark. No reason is given for the failure to secure his testimony, nor is there any other evidence in the record to overcome the presumption that he did know such fact, and that thereby the defendant below was charged with notice of such fact.

The motion for rehearing is overruled.

BUCK, J., dissenting in part as shown in the original opinion.